Commonwealth *v.* Scott-Powell Dairies, Appellant.

Argued September 27, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Algernon R. Clapp,* of *White & Clapp,* with him *Richard C. Bull* and *C. Laurence Cushmore, Jr.,* for appellant.

*Harry Polikoff,* with him *Michael A. Spatola,* Deputy Attorneys General, *Charles J. Margiotti,* Attorney General, and *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY RHODES, J., October 27, 1937:

Appellant was convicted in a summary proceeding before a magistrate for a violation of General Order No. 40, issued by the Milk Control Board, and fined $50 and costs. Upon appeal to the Court of Quarter Sessions of Philadelphia County, and after hearing de novo, appellant was again adjudged guilty, and the same penalty imposed. This appeal followed.

The scope of our review in such appeals is limited; they are more in the nature of certiorari than of a writ of error or appeal proper. *Com. v. Peacock,* 118 Pa. Superior Ct. 168, 179 A. 907. On such appeals we may examine the record, including the evidence, to determine whether the court below had jurisdiction to do the act complained of, and whether its action is supported by any evidence; but it is not the function of this court in such matters to weigh conflicting evidence. See Act of April 18, 1919, P. L. 72 (12 PS § 1165); *Revocation of Mark's License,* 115 Pa. Superior Ct. 256, 176 A. 254.

The Milk Control Board was created by the "Milk Control Board Law" (1933 Sp. Sess., Jan. 2, 1934, P. L. 174, re-enacted and amended 1935, April 30, P. L. 96, No. 43[31 PS §684 et seq.]). Under this act the board was given authority to fix prices for milk and certain milk products. Section 18E of that act (31 PS § 700a) provides that: "After the board, with the approval of the Governor, shall have fixed prices to be charged or paid for milk, whether by class, grade or use, it shall be unlawful for a milk dealer or producer to sell or buy, or offer to sell or buy, milk at any price less or more than such price or prices as shall be applicable to the particular transaction."

Section 9A of the said act (31 PS § 692) provides that: "Except as otherwise specially provided in this act, any person violating any provision of this act, or any rule, regulation or order of the board lawfully made, shall for the first or second offense, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of not less than twenty-five dollars ($25.00) nor more than two hundred dollars ($200.00), and for a third or subsequent offense shall be guilty of a misdemeanor, and shall, upon conviction thereof, be sentenced to pay a fine of not less than five hundred dollars ($500.00) nor more than one thousand dollars ($1,000.00), or to undergo imprisonment not exceeding one year, or both in the discretion of the court."

General Order No. 40 of the board, issued on February 8, 1937, and effective February 15, 1937, established a price of 42 cents per quart for light cream when the "average daily delivery during the month" was 1 to 10 quarts. The order defined "average daily delivery" as follows:

*"Average Daily Delivery.* The average daily delivery during the month shall be computed by determining the number of days upon which deliveries are actually made under the terms of the sale, and dividing the total volume of milk delivered during the month by the number of days."

When the "average daily delivery during the month" was 10 to 39 quarts, the price was fixed at 36 cents per quart.

Appellant complains that the information upon which the magistrate issued the warrant against it was defective. However, the proceeding below was an appeal to the court of quarter sessions, where the case was heard de novo; appellant did not choose to proceed by certiorari in the court of common pleas. See *Com. v. Benson et al.,* 94 Pa. Superior Ct. 10.

"If after the magistrate decided the case, a certiorari

had been issued the regularity of the proceedings would have been before the court. Every part of the record including the complaint would have been sent up, Sadler Criminal Law Procedure, p. 569, Constitution of Pennsylvania, Article 5, Sec. 10, and the judgment might have been set aside, but 'the defendant having proceeded by appeal must be presumed to have waived all mere technical errors in the proceedings of the justice, which did not go to the jurisdiction of that officer': *Steward v. Renner,* 87 Pa. Superior Ct. 411; *Swain v. Brady,* 19 Pa. Superior t. 459; *Gibson v. Haworth,* 47 Pa. Superior Ct. 618; *Com. v. Hooper,* 55 Pa. Superior Ct. 518, 520. The transcript is the foundation of the proceedings in the quarter sessions, and is the only record we have before us": *Com. v. Hunter,* 107 Pa. Superior Ct. 513, at page 515, 164 A. 113. The transcript before us in the instant case sets forth that appellant was charged in the warrant with "Viol. Act No. 43—Sect. 9—18—18E —Gen'l Order No. 40—of Penna. Milk Control Board ......on the 1st day of March, 1937 at Locust Drug Co.—1337 Locust St. in the City of Philadelphia"; that the witnesses named in the transcript "testified in substance that Scott-Powell Dairies—45th & Parrish St. did, on the 1st day of March, 1937, at Locust Drug Co.—1337 Locust St. ...... Philadelphia, Pa., violate Act No. 43—Sect. 9—18—18E—Gen'l Order No. 40— Selling light cream for $.36 qt.—6 qts. for $2.16." It is obvious that appellant was fully apprised of the charge it would have to meet in the court below, and therefore suffered no impairment of its constitutional rights. The act of assembly under which the prosecution was brought was not cited as specifically as it might have been, but that is not sufficient to require reversal. See *Com. v. Nichols,* 38 Pa. Superior Ct. 504.

Appellant contends that the court below was without jurisdiction because the magistrate also was without jurisdiction, in that he imposed a fine in a summary proceeding for an offense which was the third, in

point of time, with which defendant had been charged. Examining the record for this purpose, we find that appellant had been convicted of a violation of one of the orders of the board in 1936. This conviction has no relation to the present case except as it bears upon the number of offenses involved. On the same day that the magistrate heard the instant case, he heard another in which appellant was charged with a violation of the same general order on February 25, 1937. Since the offense involved in this appeal was committed on March 1, 1937, and therefore was the third offense in chronological sequence, appellant argues that a summary conviction was improper, and that the jurisdiction of the magistrate was confined to holding appellant in bail for action by the grand jury. This position is untenable. The "Milk Control Board Law" does not require the Commonwealth to prosecute an offender for violations thereof in the order of their commission. Admittedly, appellant had been convicted of one offense before the offenses of February 25, 1937, and March 1, 1937, had occurred. Any offense committed subsequent thereto would be a second offense within the meaning of the "Milk Control Board Law"; it would make no difference that other offenses may have intervened during the period between the first offense and that upon which the Commonwealth elected to prosecute. The act makes no distinction between the first and second offenses. Both are made amenable to summary conviction, and the same penalty is prescribed. We are not dealing with a situation where a heavier penalty was imposed improperly upon a defendant for what was termed a "subsequent offense," because the offense for which the heavier penalty was sought to be imposed occurred before the previous offense in point of time. Cf. *Com. v. Neill*, 16 Pa. Superior Ct. 210. We are of the opinion that the violation before us was treated correctly, as a second offense, by the court below.

Another question raised by appellant relates to the

sufficiency of the evidence to support the conviction. It is said that evidence of a single sale of less than 10 quarts at a price lower than that fixed by the board will not sustain a conviction under the terms of General Order No. 40; that the Commonwealth had the burden of showing that the average daily sale during the calendar month was less than 10 quarts, which would be impossible until the then current calendar month had expired. We do not agree that this is the interpretation to be given the definition of "average daily delivery during the month" as set forth in General Order No. 40. It accords no significance to the words "under the terms of the sale." The Commonwealth proved a sale and delivery of 6 quarts of light cream on March 1, 1937, at 36 cents per quart, for which $2.16 was paid on delivery; that was the complete transaction. Dividing the total volume delivered by the number of days upon which it was delivered during the month, calendar or otherwise, *under the terms of the sale,* the quotient is 6. Therefore, 36 cents per quart was less than the required price. The Commonwealth made out a prima facie case; if the "terms of the sale" were otherwise, appellant had the duty and privilege of offering evidence to that effect, but none was produced.

The remaining assignments relate to alleged technical defects in the proceedings before the magistrate, but they are not before us. *Com. v. Hunter,* supra.

All the assignments of error are overruled, and the judgment is affirmed.